25CA0081 Peo in Interest of AF 06-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0081
Jefferson County District Court No. 23JV30041
Honorable Lindsay Van Gilder, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.F., D.F., and S.F., Children,

and Concerning A.T.,

Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

---

Kimberly Sorrells, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Appellee

Alison A. Bettenberg, Guardian Ad Litem

Patrick R. Henson, Office of Respondent Parents' Counsel, Justin Twardowski, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     A.T. (mother) appeals the judgment terminating her parent-child legal relationships with A.F., D.F., and S.F. (the children). We affirm.

## I.     Background

¶ 2     The Jefferson County Division of Children, Youth and Families filed a petition in dependency or neglect, alleging concerns about mother's fentanyl use.

¶ 3     The juvenile court adjudicated the children dependent and neglected and adopted a treatment plan that required mother to address her substance use and her mental health.

¶ 4     Mother began treatment and had periods of sobriety and progress. But mother also had relapses. After her first relapse, mother eventually reengaged in treatment. But after a second relapse, mother did not. The children's guardian ad litem moved to terminate mother's parental rights. After an evidentiary hearing, the juvenile court granted the motion and terminated mother's parental rights.

## II. Reasonable Efforts

¶ 5 Mother contends that the juvenile court erred by finding that the Division made reasonable efforts to rehabilitate her. We disagree.

### A. Legal Principles and Standard of Review

¶ 6 Before the juvenile court may terminate parental rights under section 19-3-604(1)(c), C.R.S. 2024, a department must make reasonable efforts to rehabilitate the parent and reunite the family. *See* §§ 19-1-103(114), 19-3-100.5(1), 19-3-208, 19-3-604(2)(h), C.R.S. 2024. "Reasonable efforts" means the "exercise of diligence and care." § 19-1-103(114).

¶ 7 A department satisfies its reasonable efforts obligation if it provides services in accordance with section 19-3-208. § 19-1-103(114); *see People in Interest of E.D.*, 2025 COA 11, ¶ 10. As necessary and appropriate, those services include screenings, assessments, and individual case plans; home-based family and crisis counseling; information and referral services; family time services; and placement services. § 19-3-208(2)(b)(I)-(V).

¶ 8 When evaluating a department's efforts, the juvenile court should consider whether the services provided were appropriate to

2

support the parent's treatment plan. *E.D.*, ¶ 11. But the parent is ultimately responsible for using those services to obtain the assistance needed to comply with the treatment plan. *Id.* at ¶ 12.

¶ 9 Whether a department satisfied its obligation to make reasonable efforts is a mixed question of fact and law. *Id.* at ¶ 13. That means we review the juvenile court's factual findings for clear error but review de novo its legal determination as to whether the department satisfied its reasonable efforts obligation. *Id.*

## B. Analysis

¶ 10 Mother argues that the urinalysis testing services provided were "not appropriate to support" her treatment plan because the results "consistently" produced false positives and required secondary testing.

¶ 11 To be sure, the record shows that roughly ten urinalyses completed over a four-month period initially tested positive for alcohol but proved negative on confirmation testing. But the caseworker explained that the Division was concerned about mother's fentanyl use, not alcohol use, and believed that the false positives stemmed from mother's exposure to workplace chemicals. The caseworker confirmed that she had explored alternative

3

substance monitoring options but was advised that urinalysis testing provided the "best information" about fentanyl use.

¶ 12    And while the caseworker testified that false-positive results could slow a parent's progress in some cases, mother doesn't argue that the false positives affected her progress in this case. Indeed, the caseworker testified that mother was sober and progressing during the four months she had the false-positive results. It was only after mother's second relapse — which was triggered after mother had been prescribed fentanyl in the emergency room — that mother stopped progressing.

¶ 13    Given all this, we conclude that the Division's continued use of urinalysis testing to address mother's fentanyl use did not violate its reasonable efforts obligation.

### III.   Reasonable Accommodations to Avoid Nonemergency Removal

¶ 14    For the first time on appeal, mother contends that the juvenile court erred at the initial hearing by failing to "find whether reasonable accommodations and modifications. . . were provided to avoid nonemergency removal on the basis of disability," as required by section 24-34-805(2)(e), C.R.S. 2024.

¶ 15 But the juvenile court's later temporary custody order found that "[t]he children were seriously endangered, and an emergency situation existed which required the immediate temporary removal of the children from the home[,]. . . which made it reasonable not to make efforts to prevent their removal." (Emphasis omitted.)

¶ 16 Because section 24-34-805(2)(e) doesn't apply to emergency removals, we needn't address mother's unpreserved claim that the juvenile court should have considered it at the initial hearing.

## IV. Disposition

¶ 17 The judgment is affirmed.

JUDGE BROWN and JUDGE SCHOCK concur.